**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

—————————————————————————
                                                    )
DENISE ALLISON ROBINSON,                             )
                                                    )
            Plaintiff,                               )
                                                    )
      v.                                             )     Civil Action No. 08-766 (RBW)
                                                    )
DISTRICT OF COLUMBIA HOUSING                         )
AUTHORITY,                                           )
                                                    )
            Defendant.                               )
—————————————————————————)

**<u>MEMORANDUM OPINION</u>**

The plaintiff, Denise Allison Robinson, brings this action against the defendant, the

District of Columbia Housing Authority ("Authority"), challenging the termination of the

benefits she received under the Section 8 Housing Choice Voucher Program.  Complaint

("Compl.") ¶¶ 1-2.  The plaintiff alleges that the defendant violated the Administrative Procedure

Act ("APA"), 5 U.S.C. § 500 (2006), the Federal Civil Rights Act, 42 U.S.C. § 1981 (2006), and

the Due Process Clause of the Fourteenth Amendment to the United States Constitution[1] by

improperly terminating her benefits, and she seeks to have her benefits permanently reinstated,

as well as receive damages for injuries caused by the possible revocation of those benefits.

Compl. ¶¶ 1-2, 39-48.  The plaintiff further seeks injunctive relief reinstating her housing

benefits and damages for injuries caused by the Authority pursuant to the Declaratory Judgment

Act, 28 U.S.C. § 2201 (2006).  Compl. ¶¶ 1-2.  Currently before the Court is the defendant's

---

[1] Although the plaintiff alleges that the defendant violated the Due Process Clause of the Fourteenth Amendment, this claim may only be brought against the District of Columbia under the Due Process Clause of the Fifth Amendment.  <u>See</u> <u>Bolling v. Sharpe</u>, 347 U.S. 497, 498-99 (1954) (providing that because the District of Columbia is a political entity created by the federal government, it is subject to the restraints under the due process compenent of the Fifth Amendment and not the Fourteenth Amendment, which only applies to states).

motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the

grounds that the plaintiff has failed to state a claim upon which relief may be granted,

Defendant's Motion to Dismiss ("Def.'s Mot.") at 1, which the plaintiff opposes,[2] Plaintiff's

Response to Defendant's Motion to Dismiss ("Pl.'s Opp'n").  For the reasons set forth below, the

Court finds that the defendant's motion to dismiss must be granted.

## I.  FACTUAL BACKGROUND

A.      The Section 8 Housing Choice Voucher Program

        The Section 8 Housing Choice Voucher Program was created by Congress under Section

8 of the Housing and Urban-Rural Recovery Act of 1983, which amended the United States

Housing Act of 1937.  42 U.S.C. § 1437f (2006).  The purpose of the Section 8 program is to aid

"low-income families in obtaining a decent place to live and [to] promot[e] economically mixed

housing" by providing such families with subsidies to enable them to rent units in the private

rental housing market.  Id.  The federal government allocates funds to local public housing

agencies through the United States Department of Housing and Urban Development ("HUD"),

and the local public housing agencies enter into housing assistance payment contracts with

property owners when the agencies agree to subsidize the rent of eligible families.  Id.; see also

Compl. ¶ 10.

        The Authority is the public housing agency for the District of Columbia.  D.C. Code

§ 6-202 (2004).  The Authority is governed by federal regulations promulgated by HUD, 24

C.F.R. § 982 (2004), as well as by local regulations, see generally D.C. Mun. Regs. tit. 14,

§ 8900 (2004).  A participant accepted into the voucher program by the Authority must be in

---

[2] The Court considered the following papers filed in connection with this motion: the Defendant's Motion to Dismiss ("Def.'s Mot."); the Defendant's Points and Authorities in Support of Motion to Dismiss ("Def.'s Mem."); the Plaintiff's Response to Defendant's Motion to Dismiss ("Pl.'s Opp'n"); and the Defendant's Reply to Plaintiff's Opposition to Motion to Dismiss ("Def.'s Reply").

compliance with the requirements of the program, 24 C.F.R. § 982.551, and may be denied

benefits or have his or her benefits terminated for non-compliance with any of eleven

enumerated events, including the violation of the restriction on who may reside in the residence,

24 C.F.R. § 982.552(c)(1)(i)-(xi); see also 24 C.F.R. § 982.551(h)(2) (defining the obligations of

the participant, including the requirement that "[n]o other person [i.e., nobody but members of

the assisted family] may reside in the unit").  Should the Authority decide to terminate a

participant's benefits, the participant is guaranteed the right to notice and the opportunity for an

informal hearing prior to the actual termination of benefits, during which the participant may

submit evidence and question witnesses.  24 C.F.R. § 982.555; see also D.C. Mun. Regs. tit. 14,

§ 8902.1(j).

B.      Termination of the Plaintiff's Benefits

        Viewing the evidence in the light most favorable to the plaintiff, the facts underlying this

lawsuit are the following.  In 1989, the plaintiff applied for, and was granted, a Section 8 subsidy

under the Federal Housing Choice Voucher Program, which applies to her current residence at

1118 21st St., N.E., Apartment 108, Washington, D.C. 20002.  Compl. ¶ 14.  In 2006, the

plaintiff initiated a "sporadic friendship" with Raymond Hoose ("Mr. Hoose"),[3] who was

arrested on October 27, 2006 by Officer Barry Fine ("Officer Fine") at the plaintiff's apartment.

Id. at ¶¶ 18-19.  The warrant authorizing Mr. Hoose's arrest indicated that he could be found at

the plaintiff's address, and Officer Fine noted at the time of Mr. Hoose's arrest that Mr. Hoose

stated that he had been "living" with his girlfriend at that address for about two years.  Id.; Def.'s

---

[3] Mr. Hoose is also referred to as Raymond Newman in several documents provided as evidence at the informal hearing conducted by the Authority.  See Def.'s Mem., Ex. 1 (Informal Hearing Decision), Attach. 3 (Letter from Catholic Charities dated March 25, 2007); id. at Attachs. 6-7 (Letters from Members of Plaintiff's Community).  However, this discrepancy is not raised by the plaintiff and the Court need not concern itself with it in resolving the defendant's motion.  See Compl. ¶ 18 (stating that Mr. Hoose is also known as Raymond Newman).  Indeed, the plaintiff confirmed that the names Raymond Hoose and Raymond Newman refer to the same person.  Def.'s Mem., Ex. 1 (Informal Hearing Decision) at 2 n.1.

Mem., Ex. 1 (Informal Hearing Decision), Attach. 1 (Note from Officer Fine dated Oct. 27, 2006

("Note from Officer Fine")).[4]  The record also indicates, however, that Mr. Hoose may have had

other residences during the period immediately prior to his arrest.  Compl. ¶ 20; see also Def.'s

Mem., Ex. 1 (Informal Hearing Decision), Attachs. 4-9 (Letters from Members of Plaintiff's

Community).

        Based on this information, the Authority sent the plaintiff a "Recommendation for

Termination" on April 10, 2007, citing "having an unauthorized occupant" living at her residence

as the cause for the termination.  Compl. ¶ 22; Def.'s Mem., Ex. 4 (Recommendation for

Termination).  That same day, the plaintiff requested an informal hearing, Def.'s Mem. at 2,

which was held on June 13, 2007, id. at 3.  At the hearing, the plaintiff presented six letters from

members of her community, one letter from Catholic Charities, and testimony from her relatives,

all indicating that Mr. Hoose did not live with the plaintiff.  Compl. ¶ 24; Def.'s Mem., Ex. 1

(Informal Hearing Decision) at 1.  In response, the Authority presented the October 27, 2006

note of Officer Fine, a January 30, 2007 letter from the HUD's Office of Investigation, and the

testimony of Adele Myles, the Authority's Investigator who investigated the matter.  Compl.

¶ 25; Def.'s Mem., Ex. 1 (Informal Hearing Decision) at 1.

        Following the informal hearing, the Hearing Officer affirmed the Authority's

recommended termination of the plaintiff's benefits "based on the evidence presented and the

testimony received."  Def.'s Mem., Ex. 1 (Informal Hearing Decision) at 4; see also Compl. ¶ 27.

The plaintiff appealed the Informal Hearing Decision on July 16, 2007, Compl. ¶ 28; Def.'s

Mem., Ex. 2 (Appeal of Informal Hearing Decision), and on December 14, 2007, the Executive

---

[4] Because the attachments to exhibit 1 of the defendant's points and authorities in support of motion to dismiss were
not clearly labeled, the Court will refer to the attachments sequentially in the order in which they appear following
exhibit 1, the Informal Hearing Decision.

Director of the Authority affirmed the Informal Hearing Decision, Compl. ¶ 29; Def.'s Mem., Ex. 3 (Final Informal Hearing Decision of the District of Columbia Housing Authority) ("Final Decision").

On January 9, 2008, the Supervisor of the Compliance Department of the Authority's Housing Choice Voucher Program, Cedric Wormley, sent the plaintiff's landlord a letter advising it that the plaintiff's Section 8 voucher would be terminated as of February 29, 2008.  Compl. ¶ 33.  However, the plaintiff has continued to receive the Section 8 subsidy for her unit pending the resolution of this action, Pl.'s Opp'n at 7, and because the plaintiff cannot otherwise meet her rent obligations absent her Section 8 subsidy, the plaintiff alleges that she has been irreparably harmed by the defendant's purposed termination of her housing benefits, Compl. ¶¶ 35-38.

## II.  STANDARD OF REVIEW

"On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all reasonable inferences that can be derived from the facts alleged in the complaint."  Nat'l R.R. Passenger Corp. v. Veolia Transp. Servs., Inc., 592 F. Supp. 2d 86, 92 (D.D.C. 2009) (citing Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)). However, while the Court must construe the complaint in the light most favorable to the plaintiff, it "need not accept inferences drawn by [the plaintiff] if such inferences are unsupported by the facts set out in the complaint."  Kowal, 16 F.3d at 1276.  Additionally, the Court need not accept "legal conclusions cast in the form of factual allegations."  Id.  A Rule 12(b)(6) motion should be granted only when the plaintiff does not allege "enough facts to state a claim to relief that is plausible on its face."  Nat 'l R.R., 592 F. Supp. 2d at 92 (citing Bell Atl. Corp. v. Twombly, 550

U.S. 544, 547 (2007)).  In deciding whether to grant a Rule 12(b)(6) motion, the Court may only consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice."  Nat'l R.R., 952 F. Supp. 2d at 92 (citing E.E.O.C. v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997)) (citations omitted).[5]

### III.  LEGAL ANALYSIS

The defendant seeks dismissal of the plaintiff's claims pursuant to Rule 12(b)(6) on the ground that "the facts as pled, even if true, do not make out a claim" entitling the plaintiff to relief under the APA or the Due Process Clause of the Fifth Amendment to the Constitution of the United States.  Def.'s Mem. at 1.  In opposition, the plaintiff responds that her allegations are sufficient to state a claim under 42 U.S.C. § 1983 because they identify several violations by the Authority of 24 C.F.R. § 982.  Pl.'s Opp'n at 11-21.  Specifically, the plaintiff alleges that the Authority improperly relied on hearsay evidence at the informal hearing, did not provide her with the ability to cross-examine individuals who provided evidence against her, failed to consider "mitigating factors" before terminating the plaintiff's Section 8 benefits, and failed to find by a "preponderance of the evidence" that Mr. Hoose was residing with the plaintiff.  Id. The Authority replies that while the "termination of [a housing voucher] may give rise to a cause of action under § 1983 . . . [, the plaintiff] has failed to state such a claim here" because the

---

[5] Several of the documents reviewed by this Court were exhibits attached to the Defendant's Points and Authorities in Support of Motion to Dismiss, not the Complaint.  "Generally, when a court relies upon matters outside the pleadings, a motion to dismiss must be treated as one for summary judgment. . . . 'However, where a document is referred to in the complaint and is central to the plaintiff's claim, such a document . . . [may be] consider[ed] without converting [the] motion to one for summary judgment.'"  Solomon v. Office of the Architect of the Capitol, 539 F. Supp. 2d 347, 349-50 (D.D.C. 2008) (citing Vanover v. Hantman, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), aff'd, 38 F. App'x. 4 (D.C. Cir. 2002)) (internal citations omitted).  The four exhibits attached to the Defendant's Points and Authorities in Support of Motion to Dismiss and reviewed by this Court are central to the plaintiff's claims and are all referenced in the Complaint.  See Compl. ¶¶ 19-29.  Therefore, the Defendant's Motion to Dismiss will not be converted into a motion for summary judgment.

Authority afforded the plaintiff every procedural right to which she was entitled.  Def.'s Reply at 2; Def.'s Mot. at 1.  For the following reasons, the alleged actions by the Authority do not raise actionable violations under the APA or the Due Process Clause of the Fifth Amendment and therefore do not give rise to a claim under § 1983.

A.      Claims Arising Under 42 U.S.C. § 1983

It is undisputed that an improper termination of a housing subsidy can give rise to a claim under § 1983.  Def.'s Reply at 2; see Wright v. City of Roanoke Redev. & Hous. Auth., 479 U.S. 418, 429 (1987) ("[N]othing in the Housing Act . . . evidences that Congress intended to preclude petitioners' § 1983 claim"); see also Lowery v. D.C. Hous. Auth., No. CIV.A.04-1868, 2006 WL 666840, at *11 (D.D.C. Mar. 14, 2006) ("[The HUD's] regulations were adopted to ensure procedural due process . . . [and] were designed to provide enforceable rights to [p]articipants in the Section 8 Program.  [When the Authority] fail[s] to abide by [the HUD's] regulations . . . [the plaintiff] presents a cognizable claim under § 1983.").  However, because the facts in the complaint, even when read in the light most favorable to the plaintiff, do not support a finding that the defendant has violated any federal District of Columbia housing regulation in the pre-termination proceedings, the § 1983 claims must be dismissed.

i.  Reliance on Hearsay Evidence

The defendant contends that the reliance on hearsay evidence by the Hearing Officer and Executive Director of the Authority was in accordance with the administrative rules of both the Authority and HUD, as well as judicial precedent.  Def.'s Mem. at 10.  Specifically, the defendant contends that the applicable federal and local regulations governing the admission of evidence at such informal hearings explicitly allow for the admission and reliance on hearsay evidence when making an administrative determination.  Id.; see 24 C.F.R. § 982.555(e)(5)

("Evidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings."); D.C. Mun. Regs. tit. 14, § 8904.4(c) ("Evidence presented at the informal hearing may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings.").  The defendant further argues that the admission of hearsay evidence in administrative hearings is well settled and may constitute substantial evidence when considered reliable and credible.  Def.'s Mem. at 10-11 (citing Richardson v. Perales, 402 U.S. 389, 408 (1971)).  The plaintiff responds, arguing that undue reliance on hearsay evidence when denying Section 8 subsidies in the housing context is improper.  Pl.'s Opp'n at 13-18 (citing Basco v. Machin, 514 F.3d 1177 (11th Cir. 2008); Edgecomb v. Hous. Auth. of the Town of Vernon, 824 F. Supp. 312, 316 (D. Conn. 1993); Litsey v. Hous. Auth. of Bardstown, No. CIV.A.99-114-H, 1999 WL 33604017, at *1 (W.D. Ky. Apr. 1, 1999)).

    As long as it is relevant and material, the utilization of hearsay evidence in administrative proceedings is well grounded.  Hoska v. U.S. Dep't of the Army, 677 F.2d 131, 138 (D.C. Cir. 1982) ("Provided it is relevant and material, hearsay is admissible in administrative proceedings generally and in adverse action proceedings in particular."); Johnson v. United States, 628 F.2d 187, 190-91 (D.C. Cir. 1980) (stating that hearsay statements are highly probative where declarants are disinterested witnesses, statements are essentially consistent, and counsel had access to the statements prior to agency hearing); Directory Publ'g Servs., Inc. v. Runyon, 851 F. Supp. 484, 486 (D.D.C. 1994) ("The use of hearsay testimony in administrative proceedings, where relevant and material, is widely accepted."); Compton v. D.C. Bd. of Psychology, 858 A.2d 470, 476 (D.C. 2004) (stating that "nothing in the hearsay nature of evidence inherently excludes it from the concept of 'substantial' proof in administrative proceedings").  Indeed, agencies are entrusted to weigh hearsay evidence "according to its 'truthfulness, reasonableness,

and credibility.'" <u>Veg-Mix, Inc. v. U.S. Dep't of Agric.</u>, 832 F.2d 601, 606 (D.C. Cir. 1987) (citing <u>Johnson</u>, 628 F.2d at 190-91).

Although the Court is aware of no instance where courts of this Circuit have specifically ruled that hearsay is admissible in Section 8 administrative proceedings, other courts have found no reason to preclude the admission of hearsay evidence in Section 8 proceedings. <u>See</u> <u>Williams v. Hous. Auth. of City of Raleigh</u>, 595 F. Supp. 2d 627, 633 (E.D.N.C. 2008) ("[P]rocedural due process permitted the . . . Hearing Officer to consider not only the hearsay evidence that the [Raleigh Housing Authority] presented, but all other evidence received from each party at the informal hearing."); <u>Gammons v. Mass. Dept. of Hous. & Cmty. Dev.</u>, 502 F. Supp. 2d 161, 165-66 (D. Mass. 2007) ("[I]t is well established that hearsay evidence is admissible in administrative proceedings . . . [and] [t]herefore, the use of hearsay at the Section 8 hearing was permissible"); <u>Tomlinson v. Machin</u>, No. CIV.A.5-1880-T, 2007 WL 141192, at *6 (M.D. Fla. Jan. 16, 2007) ("Plaintiff seeks to hold [d]efendants to a much more rigid evidentiary standard than that imposed by HUD or [the local public housing agency] regulations.  [I]t is clear by the plain meaning of [24 C.F.R.] § 982.555 . . . that hearsay statements . . . may be considered . . . in an informal [public housing agency] hearing").

The cases relied on by the plaintiff to allege a violation of § 982.555 do not support a finding that the hearsay admitted in the plaintiff's informal hearing violated either the federal or local housing regulations.  The district court in <u>Edgecomb</u>, the case relied upon by the plaintiff, based its decision not only on the use of hearsay in finding that a viable due process violation had been established, but also on other clear violations of federal housing regulations requiring adequate notice, an opportunity to confront one's accusers, and adequate reasoning supporting the hearing officer's decision.  824 F. Supp. at 315-16.  And in <u>Edgecomb</u>, the only evidence

introduced to prove that the plaintiff, a Section 8 housing participant, had violated federal

housing regulations was a police report based on conversations the officer who prepared the

report had overheard along with two newspaper articles detailing the arrest of the plaintiff's

brother.  Id. at 315; see also Costa v. Fall River Hous. Auth., 453 Mass. 614, 627 n.18 (2009)

(noting that the only evidence presented in Edgecomb was "anonymous, second-level hearsay,

having no indicia of reliability").  Here, in contrast, several pieces of evidence and testimony

directly concerning where Mr. Hoose had been residing were presented at the plaintiff's informal

hearing, the evidence was weighed and balanced by the Hearing Officer and subsequently

reviewed by the Executive Director, and both officials described in detail their reasoning for

finding substantial evidence that Mr. Hoose was living with the plaintiff at the time of his arrest.

Def.'s Mem., Ex. 3 (Final Decision) at 3-4 (stating that the findings of fact were supported by

evidence in the record, for there was additional evidence unrelated to Mr. Hoose's arrest which

indicated that Mr. Hoose stayed with the plaintiff and represented the plaintiff's address as his

own, and that it is the Hearing Officer's job to weigh and balance the evidence presented at the

hearing); see also id., Ex. 1 (Informal Hearing Decision) at 1.

Indeed, the Court cannot find error with the Hearing Officer's determination – and the

Executive Director's subsequent affirmance – that the issuance of the arrest warrant was relevant

to the assessment of where Mr. Hoose had been residing, see id., Ex. 1 (Informal Hearing

Decision) at 2-3, because arrest warrants authorizing execution inside a residence are based on

the "reasonable belief" that the suspect lives (or can be expected to be located) at the address

listed on the warrant and will be present at the address when the warrant will be executed, United

States v. Taylor, 497 F.3d 673, 678 (D.C. Cir. 2007) ("Officers executing an arrest warrant may

enter a dwelling given 'reasonable belief' that the suspect lives there and is present at the time.")

(citation omitted).  Furthermore, Ms. Myles, the Compliance Investigator and a former Metropolitan Police Department detective, testified that "based on her experience, it is unlikely that an arrest warrant would have been issued for a person for a location that he was just visiting."  Def.'s Mem., Ex. 1 (Informal Hearing Decision) at 3.  Finally, the relevance and reliability of the hearsay evidence in this case is augmented by Mr. Hoose's statement to Officer Fine following his arrest that he lived with the plaintiff at her address.  Id., Ex. 1 (Informal Hearing Decision), Attach. 1 (Note from Officer Fine).  This evidence, combined with the testimony from the plaintiff admitting that no other individual spent more than "1-2 nights in her unit per week" and that Mr. Hoose "receive[d] his mail at her home," was reasonably relied upon by the Authority as relevant, material, and reliable concerning the residency of Mr. Hoose.  Id., Ex. 1 (Informal Hearing Decision) at 2.  Therefore, the reasoning of Edgecomb does not demand the same result here.

Similarly, the holdings in Basco and Litsey are also not persuasive because the specific hearsay evidence presented in those cases was ruled insufficient in both substance and clarity, evidentiary deficiencies which are not present in this case.  For example, the court in Litsey found that none of the evidence supported the result that the alleged unauthorized occupant lived with the plaintiff, a result that can be reached here because there is evidence that Mr. Hoose lived with the plaintiff.  1999 WL 33604017, at *6.  On the contrary, the evidence presented by the Authority at the informal hearing in this case does support the finding that Mr. Hoose "lived" with the plaintiff.  See Def.'s Mem., Ex. 1 (Informal Hearing Decision) at 2 (noting the statement from Mr. Hoose himself indicating that he "lived" with the plaintiff, his girlfriend, at her residence for about two years).  Likewise, the court in Basco found that the termination of housing benefits was based solely on two contradictory and inconclusive police reports with

internal and factual discrepancies, including the name of the alleged unauthorized resident.  514 F.3d at 1179, 1183.  Again, these problems are not present in this case because the Hearing Officer based his decision on a more sound evidentiary footing than was the case in <u>Basco</u>, and there is no dispute in this case as to the identity of Mr. Hoose, the unauthorized resident.  Def.'s Mem., Ex. 1 (Informal Hearing Decision) at 1-2.  Finally, the court in <u>Basco</u> did not even reach the conclusion that the deficiency found in that case violated the participant's due process rights. 514 F.3d at 1183 (stating explicitly that it would "not decide whether that deficiency render[ed] the Hearing Officer's reliance on the reports and the statements described therein a violation of due process").

Essentially the plaintiff appears to be arguing that hearsay principles encapsulated in the Federal Rules of Evidence should apply to administrative proceedings, but simply, that result is one that the law does not command, <u>see</u> 24 C.F.R. § 982.555(e)(5) (current federal housing regulations state that "[e]vidence may be considered <u>without</u> regard to admissibility under the rules of evidence applicable to judicial proceedings") (emphasis added), and has been judicially rejected, <u>see</u> <u>Hoska</u>, 677 F.2d at 138-39 (stating that "hearsay is admissible in administrative proceedings"); <u>see also</u> <u>Directory Publ'g</u>, 851 F. Supp. at 486 (stating that hearsay testimony in administrative proceedings is "widely accepted").  Thus, upon review of this record, the Court finds that the evidence concerning the residency of Mr. Hoose met the standard for admissibility under the current federal and local regulations and substantially supported the result that the Hearing Officer reached.  Accordingly, the plaintiff's § 1983 claim cannot be maintained based on her position that hearsay was improperly considered in terminating her Section 8 benefits.

Case 1:08-cv-00766-RBW   Document 16   Filed 09/18/09   Page 13 of 26

ii.  Cross-Examination of Witnesses

The defendant takes exception with the plaintiff's claim that the Hearing Officer violated 24 C.F.R. § 982.555 by relying on information without available witnesses to testify, asserting that federal regulations only afford participants the opportunity to cross-examine witnesses presented by the housing agency at informal hearings.  Def.'s Reply at 9-10.  Specifically, the defendant notes that the District of Columbia housing authority regulations entitle a voucher participant to "question any witnesses" at the informal hearing, § 982.555(e)(5), meaning that "if there are any witnesses called by [the Authority] at the hearing, the participant has the right to cross[-]examine them," id. at 9.  The plaintiff opposes this position, arguing that participants have a right to cross-examine any individual who provides the public housing agency with information that was relied upon as evidence at the informal hearing.  Pl.'s Opp'n at 18 (citing Section 8 Certificate Program, Moderate Rehabilitation Program and Housing Voucher Program, 55 Fed. Reg. 28,538, 28,541 (July 11, 1990) ("Participants have the right to cross[-]examine any witness upon which a [public housing agency] relies.")).  Therefore, the plaintiff argues that because the Authority "failed to meet [its] duty to confirm (or more likely refute) the 'facts' on which they relied" at the hearing, the Authority denied the plaintiff the right to cross-examine when it did not afford him the opportunity to question the police officer who said he heard Mr. Hoose's statement about where he had been living and Mr. Hoose concerning what the officer recorded in his notes.  Id.  Moreover, the plaintiff contends that "in the Section 8 termination context, a [public housing agency] should either support the elements of its claim with direct evidence or, if elements are supported by hearsay, verify its interpretation of those statements in some effective way."  Id. at 18-19.

13

It is a standard tenet of due process that participants in Section 8 housing programs are afforded the right to cross-examine witnesses brought by the administrative body at informal administrative hearings, § 982.555(e)(5) (the public housing agency and the participant "may question any witness" at the informal hearing); <u>see</u> <u>Goldberg v. Kelly</u>, 397 U.S. 254, 270 (1970) ("Welfare recipients must . . . be given an opportunity to confront and cross-examine the witnesses relied on by the department"), and it is undisputed that the plaintiff was afforded such a right so far as the witnesses who actually testified at her informal hearing, <u>see</u> Def.'s Reply at 10.  This conformed with the existing state of the law, as administrative proceedings differ from judicial proceedings in that they are not full, formal trials, and the right to cross-examine witnesses in administrative hearings is not absolute.  See <u>Cellular Mobile Sys., Inc. v. F.C.C.</u>, 782 F.2d 182, 198 (D.C. Cir. 1985) ("Cross-examination is . . . not an automatic right conferred by the APA"); <u>Am. Pub. Gas Ass'n v. Fed. Power Comm'n</u>, 498 F.2d 718, 723 (D.C. Cir. 1974) ("Even in a formal adjudicatory hearing under the APA, . . . cross examination is not always a right.")  And the law of the District of Columbia presents the same view of a limited right to cross-examination in administrative proceedings, <u>Cathedral Park Condo. Comm. v. D.C. Zoning Comm'n</u>, 743 A.2d 1231, 1250 (D.C. 2000) (providing that the agency has "'broad discretion' in regulating the nature, scope and duration of cross-examination") (citation omitted), as does the view across several other federal circuits, <u>see</u> <u>Passmore v. Astrue</u>, 533 F.3d 658, 661-62 (8th Cir. 2008) (holding there is no absolute right to cross-examination even when the regulation affords the agency discretion to subpoena a witness); <u>Foxy Lady, Inc. v. City of Atlanta</u>, 347 F.3d 1232, 1237 (11th Cir. 2003) ("[N]o absolute or independent right to subpoena witnesses exists during administrative proceedings, and . . . procedural due process . . . does not require an absolute or independent right to subpoena witnesses in administrative hearings"); <u>Cent. Freight Lines, Inc. v.</u>

United States, 669 F.2d 1063, 1068 (5th Cir. 1982) ("Cross-examination is . . . not an absolute

right in administrative cases.").

The plaintiff primarily relies upon language from the "Supplementary Information" of the

Federal Register as support for her view that the right to cross-examine constitutes the right to

question any witness upon which the public housing agency relied at the hearing.  Pl.'s Opp'n at

18 (citing 55 Fed. Reg. 28,538, 28,541 (July 11, 1990) ("Participants have the right to cross[-]

examine any witness upon which a [public housing agency] relies")).  However, this reliance is

unpersuasive for two reasons.  First, this language is not binding on the Authority when

conducting informal hearings, as the cited language was never incorporated into the Code of

Federal Regulations.[6]  Additionally, the passage cited by the plaintiff also states that HUD "has

no subpoena power to grant either [public housing agencies] or participants with respect to these

matters, nor are they needed to afford procedural due process in an administrative proceeding for

termination of housing subsidy."  Id. at 28,541 (emphasis added).

The plaintiff's reliance on Edgecomb as support for her position is equally unpersuasive.

As noted already, the voucher participant in Edgecomb was denied numerous procedural rights,

including lack of notice and an inadequately supported decision, in addition to the fact that the

hearsay evidence presented in the case was anonymous and unreliable.  See supra Section A(ii).

Additionally, the language in Edgecomb regarding the more expansive right to cross-

examination presents a minority view which this Court finds unpersuasive because it seemingly

applies Goldberg too broadly.  Compare Goldberg, 397 U.S. at 270 (requiring that a welfare

---

[6] The language cited by the plaintiff is found in the "Supplementary Information" section of the Federal Register, and the revisions incorporated into the Code of Federal Regulations on July 11, 1990 concerning informal reviews and hearings (previously codified in § 887.405 and currently codified in §§ 982.554-55) do not incorporate this language.  The current language in the Code of Federal Regulations concerning the right to cross-examine witnesses at informal hearings reads, "[t]he [public housing agency] and the family must be given the opportunity to present evidence, and may question any witnesses." § 982.555(e)(5).

recipient be afforded "an opportunity to confront and cross-examine <u>witnesses</u> relied on by the department") (emphasis added), <u>with</u> <u>Edgecomb</u>, 824 F. Supp. at 316 ("Denying the tenant the opportunity to confront and cross-examine <u>persons</u> who supplied information upon which the housing authority's action is grounded is improper.") (emphasis added).  Indeed, it is undisputed that the plaintiff was permitted to cross-examine the Authority's witness, Ms. Myles, who was the only live witness who presented adverse testimony against the plaintiff.  Def.'s Reply at 10. Given these facts, the Court cannot find that the plaintiff has stated an actionable § 1983 claim on the basis that she was denied her right to cross-examination at the informal hearing.

   iii.  <u>The Authority's Consideration of "Mitigating Factors"</u>

        The defendant contests the allegation that it violated 24 C.F.R. § 982.552(c)(2)(i) by failing to exercise discretion and adequately consider the circumstances and impact the termination would have on the plaintiff and her family by arguing that the "consideration of mitigating factors" is not mandatory, but completely within the Hearing Officer's discretion, and that the Authority did not violate the plaintiff's rights by failing to consider those mitigating factors.  Def.'s Mem. at 8-9; <u>see</u> Compl. ¶ 43.  The plaintiff maintains that the defendant was "obligated" to consider and make factual findings concerning what impact losing her benefits would have on the plaintiff.  Pl.'s Opp'n at 20-23.  The plaintiff highlights the fact that nothing in the Informal Hearing Decision indicates that the Hearing Officer considered such factors, and argues that this omission is a per se violation of 24 C.F.R. § 982.552(c)(2)(i).  <u>Id.</u> at 20-21 (relying on <u>Carter v. Lynn Hous. Auth.</u>, 880 N.E.2d 778, 780 (Mass. 2008)).

        The text of § 982.552(c)(2)(i) explicitly states that consideration of circumstances regarding the participant's health and family situation "may" be considered.  <u>Compare</u> § 982.552(c)(2) ("In determining whether to deny or terminate assistance because of action or

failure to act by members of the family . . . [t]he [public housing authority] <u>may</u> consider all relevant circumstances") (emphasis added), <u>and</u> § 982.552(c)(2)(ii) ("The [public housing agency] <u>may</u> permit the other members of a participant family to continue receiving assistance") (emphasis added), <u>with</u> § 982.552(c)(2)(v) ("[t]he [public housing agency's] admission and termination actions <u>must</u> be consistent with fair housing and equal opportunity provisions of § 5.105 of this title") (emphasis added), <u>and</u> § 982.552(d) ("[t]he [public housing agency] <u>must</u> give the family a written description of . . . family obligations under the program") (emphasis added).  The Court "must give substantial deference to an agency's interpretation of its own regulations" and must give the agency's interpretation "'controlling weight unless it is plainly erroneous or inconsistent with the regulation' . . . [or] unless an 'alternative reading is compelled by the regulation's plain language.'"  <u>Thomas Jefferson Univ. v. Shalala</u>, 512 U.S. 504, 512 (1994) (internal quotation and citations omitted).  Given the language and plain meaning of the words used 24 C.F.R. § 982.552(c)(2)(i), the Court must defer to the agency's interpretation of the regulation and therefore, the Hearing Officer was under no obligation to explicitly consider the mitigating circumstances presented at the informal hearing by the plaintiff.

Similarly, the plaintiff's reliance on <u>Carter</u> is unavailing.  While the court in <u>Carter</u> held that it was important for the Hearing Officer to indicate whether or not the mitigating factors were taken into account in making the termination decision, its rationale for finding a denial of due process was that there was "no indication in the record that the plaintiff gave testimony of her economic fragility or disability at the hearing" and that the Hearing Officer failed to make "factual findings of any kind."  880 N.E.2d at 785-86.  Here, by contrast, the plaintiff admits that she presented testimony at the hearing concerning her medical, economic, and familial circumstances, Pl.'s Opp'n at 22, and the plaintiff's Informal Hearing Decision was detailed and

contained factual findings which allowed the Executive Director, and now this Court, the ability

to review the Hearing Officer's reasoning and decision.  Def.'s Mem., Ex. 1 (Informal Hearing

Decision).  Based upon the discretion afforded to public housing agencies in program

administration, see 42 U.S.C. § 1437(a)(1)(C) (stating that "[i]t is the policy of the United States

. . . to vest in public housing agencies . . . the maximum amount of responsibility and flexibility

in program administration"), the permissive language of 982.552(c)(2)(i), and the canons of

statutory interpretation, the plaintiff cannot maintain a § 1983 claim based upon the theory that

the Authority failed to reference or consider the mitigating circumstances she presented at the

informal hearing.

   iv. The Authority's Application of the Preponderance of the Evidence Standard

   The defendant challenges the plaintiff's allegation that it violated § 1983 by failing to

abide by the federal regulation's requirement that the Authority employ the preponderance of the

evidence standard in rendering its decisions and argues that the Hearing Officer made the

appropriate and necessary credibility determinations based on the proper evidentiary standard

and that both the Hearing Officer and Executive Director's decisions demonstrate that enough

evidence was presented for a reasonable fact-finder to conclude that Mr. Hoose had been an

unauthorized resident at the plaintiff's apartment.  Def.'s Mem. at 8; Def.'s Reply at 6.  In

contrast, the plaintiff maintains that the defendant failed to establish by a preponderance of the

evidence that Mr. Hoose was a resident of the plaintiff's apartment, claiming that the execution

of the arrest warrant at her residence was insufficient to prove Mr. Hoose's residency.  Pl.'s

Opp'n at 25-26.

   According to the APA, a final agency action should only be set aside if it is found to be

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C.

§ 706(2)(A).  Similarly, when an agency's holding is "based on factual analysis, the court will set it aside only if the holding is unsupported by 'substantial evidence.'"  <u>Beverly Enters., Inc. v. Herman</u>, 130 F. Supp. 2d 1, 12 (D.D.C. 2000) (citing <u>Robinson v. Nat'l Transp. Safety Bd.</u>, 28 F.3d 210, 215 (D.C. Cir. 1994)).  Substantial evidence "requires enough evidence that a reasonable mind might accept as adequate to support the conclusion of the agency . . . [and] [t]he court must accept decisions based on substantial evidence even if a plausible alternative interpretation of the evidence would support another view."  <u>Beverly</u>, 130 F. Supp. 2d at 13. Therefore, the Court must afford substantial deference to the Authority's determination.  <u>See also Time Warner Entm't Co. v. F.C.C.</u>, 240 F.3d 1126, 1133 (D.C. Cir. 2001) ("Substantial evidence does not require a complete factual record . . . [and the court] must give appropriate deference to predictive judgments that necessarily involve the expertise and experience of the agency."); <u>Feinerman v. Bernardi</u>, 558 F. Supp. 2d 36, 45 (D.D.C. 2008) ("The 'agency's explanation need not be a model of analytic precision to survive a challenge' under the APA; rather, '[a] reviewing court will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'") (internal quotation and citations omitted).

Upon review of the evidence presented at the informal hearing and in light of the degree of deference the Court must afford to the Authority's actions, the Court cannot conclude that the Hearing Officer failed to apply the preponderance of the evidence standard when he determined that the evidence supported his conclusion that the plaintiff violated the obligations of a participant.  The plaintiff admitted that Mr. Hoose received mail at her apartment, acknowledged that she sometimes allowed unidentified individuals to spend "1-2 nights in her unit per week," Def.'s Mem., Ex. 1 (Informal Hearing Decision) at 2, and that Mr. Hoose "may well have spent considerable time in the unit [and] even gotten some mail there," <u>id.</u>, Ex. 2 (Appeal of Informal

Hearing Decision) at 2.  These admissions are buttressed by Mr. Hoose's arrest at the plaintiff's

apartment, which at a minimum suggests that there was "reasonable belief" by the affiant that

Mr. Hoose was likely to be present at the address at the time the warrant would be executed.  See

Taylor, 497 F.3d at 678.  Further, as noted earlier, Ms. Myles, an investigator for the Authority

and a former Metropolitan Police Department detective, testified that it is not likely that a

warrant would have been issued for the arrest of a person at a location where the person was

"just visiting."  Def.'s Mem., Ex. 1 (Informal Hearing Decision) at 3.  Even more significantly,

the Hearing Officer considered that Mr. Hoose told Officer Fine that he lived with his girlfriend

for about two years at the plaintiff's address at the time of his arrest.  Id., Ex. 1 (Informal Hearing

Decision), Attach. 1 (Note from Officer Fine).  The preponderance of the evidence standard

"simply requires the trier of fact 'to believe that the existence of a fact is more probable than its

nonexistence,'" Concrete Pipe & Prods., Inc. v. Constr. Laborers Pension Trust, 508 U.S. 602,

622 (1993) (citation omitted), and is "not an 'invitation' for the Court to substitute its judgment

for that of the agency," Summit Investigative Serv., Inc. v. Herman, 34 F. Supp. 2d 16, 20

(D.D.C. 1998) (citing Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988)).  Therefore,

although neither the Informal Hearing Decision nor Final Decision specifically reference the

preponderance of the evidence standard, the conclusions of the Hearing Officer and Executive

Director were based on the correct evidentiary standard because both reviewed all of the

evidence in detail and held that the finding that Mr. Hoose was an unauthorized resident was

"reasonable and supported by ample evidence [in the] record."  Def.'s Mem., Ex. 3 (Final

Decision) at 2-4; see also id., Ex. 1 (Informal Hearing Decision) at 2-4.

The Court cannot find that the evidence submitted by the plaintiff at the informal hearing

demands a contrary result on the grounds that the evidence was weakened by the testimony given

at the informal hearing, including that of the plaintiff.  See id., Ex. 1 (Informal Hearing Decision) at 2-3.  The plaintiff admitted that she sometimes authorized individuals to spend "1-2 nights in her unit per week," that Mr. Hoose received his mail at her address, and that two of the persons offering sworn letters on her behalf knew that Mr. Hoose "stayed at her home overnight from time-to-time."  Id., Ex. 2 (Appeal of Informal Hearing Decision) at 2.  Similarly, the plaintiff's daughter testified that she "never spends the night" with the plaintiff and that she does not believe that Mr. Hoose spends "more than one night at a time" with the plaintiff.  Id., Ex. 3 (Final Decision) at 3.  Consequently, based on the weight of the evidence presented by the Authority, and in fact augmented by the plaintiff's own testimony, coupled with the deferential standard of review the Court must afford to administrative agency decisions, the plaintiff cannot maintain a § 1983 claim based upon the theory that the Authority failed to abide by the preponderance of the evidence standard when making its determination regarding the termination of the plaintiff's Section 8 subsidy.[7]

**B.**   Claim Arising from the Authority's Alleged Violation of the Plaintiff's Due Process Rights Under the Fifth Amendment

The defendant disputes the plaintiff's claim of a Fifth Amendment violation, arguing that the opportunities and rights afforded to the plaintiff throughout the process to terminate her housing voucher were in accordance with the Amendment's due process requirements.  Def.'s Mem. at 11-14.  The defendant contends that due process is a "flexible concept that does not necessarily require all of the protections of judicial proceedings in every circumstance," id. at 12

---

[7] The plaintiff's additional proffered evidence, a letter from Catholic Charities, is irrelevant given that it merely indicates that Mr. Hoose was living at the Catholic Charities facility beginning on March 25, 2007, almost five months after the date of his arrest at the plaintiff's address, thereby proving nothing as to the residency of Mr. Hoose during the relevant time period prior to his arrest.  Compare Def.'s Mem., Ex. 1 (Informal Hearing Decision), Attach. 3 (Letter from Catholic Charities dated March 25, 2007) (indicating that Mr. Hoose had been living at the charity's facility since March 25, 2007, while the date of Mr. Hoose's arrest was October 27, 2006), with Compl. ¶ 18 (noting the arrest of Mr. Hoose occurred on October 27, 2006).

(citing <u>Mathews v. Eldridge</u>, 424 U.S. 319, 334-35 (1976)), and that the plaintiff was only entitled to an informal hearing at which hearsay evidence was admissible against her, <u>id.</u>[8]  To the contrary, the plaintiff alleges that termination of her benefits without an appropriate hearing employing the appropriate rules of evidence and burden of proof violates her right to due process under the Fifth Amendment.  Compl. ¶ 46.

In assessing whether a due process violation has occurred, a threshold question for the Court is whether the party asserting the violation has a protected property interest that she claims has been violated.  <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 538 (1985).  There is no debate that the plaintiff's participation in the Section 8 program constitutes a property interest in this respect because "a [p]articipant in the Section 8 [p]rogram 'enjoys a property interest in continued occupancy of subsidized housing. '"  <u>Lowery</u>, 2006 WL 666840, at *7.  Therefore, the next question becomes what process is due before the deprivation of the interest is constitutionally permissible.  <u>Id.</u> at *6 (citing <u>Propert v. District of Columbia</u>, 948 F. 2d 1327, 1331 (D.C. Cir. 1991)).  The protections necessary to satisfy due process vary depending on the "time, place and circumstance. . . . as the particular situation demands."  <u>Mathews</u>, 424 U.S. at 334.  With respect to the termination of a participant's government assistance benefits, the

---

[8] The defendant also argues that the plaintiff is barred from brining a due process claim in this context because the plaintiff has failed to bring an action in the Superior Court of the District of Columbia, a court which has the authority to review the plaintiff's termination on a <u>de novo</u> standard of review.  Def.'s Mem. at 12-14; <u>see</u> D.C. Mun. Regs. tit. 14, 8905.4(a) ("The final decision shall include notification that . . . cases thereafter taken to Superior Court of the District of Columbia . . . are not based on the record of the informal hearing and are be tried de novo, as if no determination had been made by [the Authority] and its hearing officer prior thereto.").  The plaintiff's opposition focuses on the argument that participants are not barred from brining a § 1983 claim when they have failed to first bring their case in Superior Court.  Pl.'s Opp'n at 23-24.  As another member of this Court has found, a participant in the Authority's Section 8 housing program is not barred from brining a claim arising under a federal statute against the Authority in this Court despite the fact that the participant has not first brought the claim in the Superior Court of the District of Columbia.  <u>Lowery</u>, 2006 WL 666840, at *6-11.  The Court agrees with the holding in <u>Lowery</u>, and therefore concludes that the plaintiff is not barred from bringing an action in this Court under § 1983 despite the fact that she has not first brought her case in the Superior Court.

Supreme Court outlined the constitutional due process requirements a participant must be

afforded in <u>Goldberg</u>, holding that:

> [A] pretermination [sic] hearing must include the following
> elements: (1) "timely and adequate notice detailing the reasons for
> a proposed termination"; (2) "an effective opportunity (for the
> recipient) to defend by confronting any adverse witnesses and by
> presenting his own arguments and evidence orally"; (3) retained
> counsel, if desired; (4) an "impartial" decisionmaker [sic]; (5) a
> decision resting "solely on the legal rules and evidence adduced at
> the hearing"; (6) a statement of reasons for the decision and the
> evidence relied on.

<u>Mathews</u>, 424 U.S. at 325 n.4 (citing <u>Goldberg</u>, 397 U.S. at 266-71).  The Court in <u>Goldberg</u>

went on to explain that the pre-termination hearing mainly functions "to produce an initial

determination of the validity of the welfare department's grounds for discontinuance of payments

in order to protect a recipient against an erroneous termination of his benefits," 397 U.S. at 267,

and that a "pre-termination hearing need not take the form of a judicial or quasi-judicial trial," <u>id.</u>

at 266.

    The plaintiff does not allege any facts which assert that the defendant failed to meet any

of the standards set forth in <u>Goldberg</u>.  The plaintiff claims that the defendant violated her rights

secured by "the Due Process Clause of the [Fifth Amendment]" based on the defendant's

termination of her Section 8 voucher "without an appropriate hearing employing appropriate

rules of evidence and burden of proof."  Compl. ¶ 46.  However, according to <u>Goldberg</u>, this

allegation does not give rise to a plausible due process claim, as the record clearly indicates that

the plaintiff: (1) received timely and adequate notice of the intended termination of her Section 8

voucher, Compl. ¶ 22; Def.'s Mem., Ex. 4 (Recommendation for Termination); (2) was presented

with the opportunity to appear at a hearing, present evidence and question witnesses called by the

defendant, Compl. ¶¶ 23-25; (3) was afforded the right to representation by counsel and was in

fact represented by counsel, id. at 11 (the complaint is signed by three members of the law firm of Arnold & Porter, LLP); (4) had the right to an impartial decision-maker at the informal hearing and on appeal, id. ¶¶ 27-29; (5) had a hearing conducted based on the applicable rules of law and evidence for administrative hearings, Def.'s Mem., Ex. 1 (Informal Hearing Decision) at 1; and (6) was provided with a written decision by the Hearing Officer – and subsequent written affirmation by the Executive Director – outlining the reasons for the decision, id. at 1-4; id., Ex. 3 (Final Decision).  The plaintiff has cited to no additional legal authority entitling her to any more procedural or substantive guarantees, and has therefore received "[t]he fundamental requirement of due process[:] the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  Mathews, 424 U.S. at 333.  The applicable regulations and judicial authority simply do not afford the plaintiff the right to have the formal rules of evidence applied at such informal hearings.  24 C.F.R. § 982.555(e)(5).

C.      The Authority's Alleged Failure to Follow the Administrative Plan

The defendant dismisses the plaintiff's allegations that the termination of her voucher privileges failed to comply with the Authority's administrative plan and therefore violates 24 C.F.R. § 982.54.  It is the Authority's position that the plaintiff has failed to identify any instance in which the Authority has failed to comply with the regulations set out in the administrative plan.  Def.'s Mem. at 16-17.  The plaintiff maintains that the termination of her voucher without an appropriate hearing fails to comply with the Authority's administrative plan and therefore violates 24 C.F.R. § 982.54, which requires public housing agencies to follow their administrative plans.  Compl. ¶¶ 47-48; see also D.C. Mun. Regs. tit. 14, § 8900 (codification of the Authority's administrative plan).  The Court agrees with the Authority that the plaintiff does not allege any specific violation of the Authority's administrative plan, so the Court must assume

based on the totality of her allegations that the plaintiff is referring to the section of the

Authority's administrative plan which governs informal hearing procedures.  See D.C. Mun.

Regs. tit. 14, § 8904.4. [9]

The administrative plan requires the Authority to present participants facing voucher

terminations with an opportunity to "present evidence and question any witnesses," § 8904.4(b),

while maintaining that the "[e]vidence presented at the informal hearing may be considered

without regard to admissibility under the rules of evidence applicable to judicial proceedings,"

§ 8904.4(c).  Based on the rulings already made by the Court, it concludes that the Authority's

admission and reliance on the evidence presented at the plaintiff's informal hearing was not

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" and

therefore not a violation of the APA, 5 U.S.C. § 706(2)(A), nor was the plaintiff denied the

opportunity to question any witnesses brought by the Authority at the informal hearing, Def.'s

Reply at 10.  Therefore, the plaintiff cannot maintain a viable § 1983 claim based on her theory

that the Authority violated 24 C.F.R. § 982.54 by failing to follow the Authority's administrative

plan.

## IV.  CONCLUSION

For the foregoing reasons, the Court concludes that the plaintiff has not alleged facts in

her complaint regarding the termination of her Section 8 housing subsidy which, even if true,

would entitle her to relief under the APA or the Due Process Clause of the Fifth Amendment to

---

[9] The plaintiff merely alleges that the lack of an "appropriate hearing" fails to comply with the Authority's administrative plan.  Compl. ¶ 48.

the Constitution of the United States.  Accordingly, the defendant's motion to dismiss must be granted.[10]

_____/s/_____
Reggie B. Walton
United States District Judge

---

[10] The Court has contemporaneously issued an Order consistent with this Memorandum Opinion.